IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION

| | |
|---|---|
| PARK SOUTHERN NEIGHBORHOOD CORPORATION )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>VESTA MANAGEMENT CORPORATION )<br>)<br>)<br>)<br>Defendants. ) | Civil Action No<br>1:14-cv-01675 RBW |

## AMENDED COMPLAINT
( Unlawful Conversion, Tortious Interference with Business Relationship)

### INTRODUCTION

1. This is a civil action seeking compensatory and punitive damages against the Defendant for unlawful conversion of property, and tortious interference with business relationship and other conduct all in violation of District of Columbia statutory laws, common law, and constitutional law.

### JURISDICTION AND PARTIES

2. Jurisdiction of this Court is founded upon D.C. Official Code Section 11-921

3. All of the acts complained of herein occurred in the District of Columbia.

4. The Defendant Corporation is actively doing business in the District of Columbia.

5. Plaintiff is a District of Columbia non-profit corporation that was incorporated on December 21, 1994. The property located at 800 Southern Ave SE Washington, DC 20032 is an asset belonging solely to the Plaintiff.

## STATEMENT OF FACTS

6. Plaintiff, Park Southern Neighborhood Corporation was organized as a not for profit entity on or about December 21, 1994. Its primary purpose is to make adequate housing available to poor and underprivileged residents of the Park Southern neighborhood of Washington, DC, and provide ancillary and supportive services to such residents.

7. Defendant Vesta is a Corporation actively doing business in the District of Columbia as a property management firm, and has contracts with many property owners in the District of Columbia.

8. On September 19, 1996, Plaintiff was granted title on the premises of 800 Southern Ave SE, Washington, DC 20032, as represented by a Special Warranty Deed of that date, in furtherance of its goals and mission.

9. Thereafter, on December 8, 2005, Plaintiff entered into a Loan Agreement with the Defendant District of Columbia whereby the latter would provide Three Million Seventy Six Thousand, Six Hundred and Forty One Dollars ($3,076,641.00) of Housing Production Trust (HPTF) monies to be used to refinance and rehabilitate the premises.

10. During the course of Plaintiff's ownership, the Plaintiff made great strides in improving the Park Southern Apartment residence. What once was a drug and prostitute den and haven for dog fights and other criminal activity, Park Southern gradually has become a highly sought after affordable residence in Southeast Washington, DC, under Plaintiff's leadership.

11. Among many other notable changes and improvements, Plaintiff renovated the lobby area, increased the lighting in the hallways, and lobby areas, and

instructed to call the police to immediately report any crime on the premises. The President of the Board herself, spent many late night hours evicting non-residents engaged in criminal activity on the premises, and consistently engaged the police to establish a clear police and security presence at Park Southern. As a result of Plaintiff's efforts, the crime rate at Park Southern greatly decreased.

12. The Plaintiff, consistent with its mission, also offered ancillary services to the building for its residents, (i.e., NA meetings, a *free* Farmer's Market, a youth development program, daycare, etc) many of whom needed such support.

13. During the Plaintiff's tenure in operating the building, it became apparent that the costs of repair, maintenance, and overhead, were outweighed by the income collected from the tenants. The Plaintiff, a non-profit, and not an experienced property management company began to look for assistance in balancing expenses, and running the property.

14. Plaintiff had utilized the services of several property management companies since it acquired the premises. However, given the reduced rents charged by the Plaintiff to tenants to keep the property affordable, and increased costs of utilities and services, Plaintiff began to self manage the premises several years ago in order to apply monies formerly paid to management companies to the building's operating costs.

15. As costs and debt continued to rise, Plaintiff sought out a partner for the operation and potential acquisition of the premises because Plaintiff believed it was unable to acquire credit and funding to coincide with rising costs. One of the major concerns, was Plaintiff's delinquency on its HPTF obligation.

16. In mid to late 2013, Defendant Vesta was introduced to Plaintiff by a private party, as a potential partner in the operation of the premises and a potential purchaser of the premises.

3

17. Thereafter, Plaintiff sought a meeting with District of Columbia Housing Development Corporation (DHCD) to introduce it to Defendant Vesta, and discuss property management and partnership, to address the HPTF delinquency and other property management issues. During said meeting, it became clear that the Defendant Vesta and Defendant DHCD were well known to each other, and that Defendant had been in contact with DHCD regarding Plaintiff's loan, and delinquency status, without consent or knowledge by Plaintiff. During the meeting DHCD rousingly endorsed the proposed union between Plaintiff and Defendant Vesta.

18. Plaintiff and Defendant Vesta entered a property management agreement in late 2013, providing that Defendant would manage the premises owned by the Plaintiff and would operate the project according a Management Plan to be developed by the Defendant Vesta, and agreed upon by Plaintiff, which included Defendant Vesta involving Plaintiff in all decision making, and allowing Plaintiff to continue its non-profit mission and supportive services to the tenants on site.

19. Despite the agreement, Defendant Vesta did not assume management of the property as delineated in the agreement.

20. Thereafter, Defendant Vesta orchestrated a meeting between DHCD, and Plaintiff, in which Defendant District of Columbia warned Plaintiff that it was in default of the Loan Agreement, and threatened that it would foreclose on the premises if Plaintiff did not permit Defendant Vesta to manage the premises owned by it. Thereafter, Defendant Vesta presented Plaintiff a second Management Agreement on or about January 6, 2014, containing drastically different language burdensome to Plaintiff. Plaintiff never executed the January 6, 2014 agreement, however, Defendant typed and cut and pasted an electronically generated signature of the Board.

21. On or about January 6, 2014, Plaintiff acquiesced to Vesta's assistance because it was fearful that the close relationship declared by Defendant District of Columbia Department of Housing and between and Defendant would result in the loss of housing serving the needs of more than one thousand (1,000) moderate and low income District of Columbia residents.

22. However, after a month of operation, defendant Vesta had failed to proffer the Management Plan outlined in the Agreement delineating how the property would be managed; had failed to pay obligations associated with the operation of the premises even though it had collected nearly Five Hundred Thousand Dollars ($500,000.00) in rental payments from tenants from January 2014 until that time; and had failed to make appropriate repairs in accordance with the Management Agreement.

23. In addition to numerous other breaches of the Property Management Agreement, Defendant Vesta also failed to communicate with Park Southern, and remit ancillary revenues to Plaintiff as required by the Agreement between the parties for the operation of an on-site Learning Center.

24. On or about March 19, 2014, Plaintiff terminated the Property Management Agreement, and contracted with CSMI, a reputable property manager in the District of Columbia. Plaintiff immediately informed DHCD of its intentions to continue with a new property management company CSMI, Inc. and not Defendant Vesta. Plaintiff continued in contract with CSMI for 42 days.

25. In late March 2014, Plaintiff also notified Defendant Vesta that its Board of Directors declined to execute the Purchase Agreement proffered by Defendant Vesta for its acquisition of the premises owned by Plaintiff.

26. Very shortly thereafter, on April 2, 2014, the District of Columbia delivered to Plaintiff a Notice of Default alleging the Plaintiff violated the Loan Agreement.

27. On April 7, 2014, District of Columbia issued a second Notice of Default alleging the Plaintiff violated the Loan Agreement in not making timely payments pursuant to the Loan Agreement, even though Defendant Vesta had secured all of the rents for two months.

28. Plaintiff and the new property manager (CSMI) proffered various scenarios to DHCD, offering to bring the past due amounts owed by Park Southern current, and to continue to manage the property and address all of the issues of default outlined in the April 2nd and 7th letters. Plaintiff also tried to obtain access and an accounting of the $500,000 Vesta had collected, in an effort to cure the default. Defendant Vesta refused to release any information to Plaintiff.

29. On the morning of Saturday, May 3, 2014, Defendant Vesta showed-up, unannounced to the premises at 800 Southern Ave SE, armed with only a letter from DHCD stating that Vesta was selected to replace the new property management company retained by Plaintiff (CSMI). Vesta did not purchase the building, and was not replacing the Plaintiff as owner. Nevertheless, Vesta without a court order evicted Plaintiff, the owner of the building, from the premises.

30. Defendant has failed, and continues to fail to keep the Plaintiff, who remains the lawful property owner, informed of any and all management tasks; informed of any financial accounting and information regarding the management of the Plaintiff's property to Plaintiff's detriment, and Plaintiff has and continues to suffer from irreparable harm.

31. Defendant, without Court authorization is evicting tenants and doing business in Plaintiff's name.

## COUNT I
## (UNLAWFUL CONVERSION OF PROPERTY

32. Plaintiff incorporates by reference, paragraphs 1 thought 30, as if fully set forth and repeated herein.

33. Defendant Vesta changed to the locks to doors on the premises, including the financial offices, Park Southern Neighborhood Corporation's corporate offices and property management office. To prohibit Plaintiff from responding to Defendant District of Columbia's two (2) Notices of Default, Defendant Vesta also removed Plaintiff's corporate file cabinets containing its historical information such as by-laws, articles of incorporation, resolutions, deeds, notes, contracts, reports outlining certifications of income, etc. Defendant, again without court order, also seized the personal property of the Plaintiff to include computers, laptops, and furniture, etc. The location and whereabouts of the contents of Plaintiff's personal property remains unknown.

34. By acting as DHCD's agent to manage Plaintiff's premises, Defendant Vesta has violated the laws related to foreclosure and common law conversion and has effectively taken the premises without affording Plaintiff, the owner, any and all protections arising out of the law. Moreover, Defendant Vesta's actions to deprive Plaintiff of its documents and records prohibits Plaintiff from responding to the default notices issued by the District of April 2, 2014, April 7, 2014, and May , 2014, and thus results in an unlawful and malicious conversion of property.

35. In this case, DHCD has not foreclosed on or sold the property. DHCD did not file for Plaintiff to be removed. Indeed, it was not until recently that the Office of the

Attorney General, representing the District, filed a motion with this court, and is requesting (at the very least) a judicial foreclosure, or some procedure, which protects the rights of the citizens of the District of Columbia, and the non-profit owner who is in good standing as a corporate entity, albeit behind in its obligations on the HPTF loan. DHCD has authorized Defendant Vesta as a *temporary* property management company. Defendant Vesta, as a temporary property manager, therefore was not authorized to 1) evict the defendant, as the rightful owner of the property, and change the locks; 2) seize personal property of the Defendant; 3) make any renovations to the property; 4) seize Defendant's mail or bank accounts; or 5) open bank accounts in Plaintiff's name. Indeed, Defendant Vesta's taking of Plaintiff's property and possession of Plaintiff's personal property necessary to address the alleged default in this matter is tantamount to an illegal and unlawful conversion.

36. As a direct and proximate result of the acts and omissions of the Defendant and its employees, the Plaintiffs were wrongfully and tortiously deprived of their property.

**WHEREFORE**, the Plaintiffs demand judgment against Defendant for compensatory damages in the amount of Two Hundred Thousand Dollars ( $200,000), and punitive damages in the amount of Ten Millions Dollars ($10,000,000).

COUNT III
TORTIOUS INTERFERENCE WITH BUSINESS

37. Plaintiff incorporates by reference, paragraphs 1 thought 35, as if fully set forth and repeated herein.

38. In addition to taking the personal and business property of the Plaintiff, Defendant Vesta has opened bank accounts in PSNC name without authorization; filed legal actions in the name of the Plaintiff, and continues to do business in PSNC name without any

legal authority. Defendant Vesta has taken mail addressed to PSNC, has prohibited PSNC from operating as a DC non-profit organization, and interfered with Plaintiff's right to do business with the government, private entities, and its contractors to its pecuniary detriment.

39. In March, Plaintiff hired a new property manager (CSMI), and Defendant, without legal authorization removed the contractor that Plaintiff had hired from the property, and prevented the contractor from doing business with Plaintiff under the contract.

40. To establish a prima facie case of tortious interference with contractual or other business relationships in the District of Columbia, a plaintiff must prove four elements: (1) existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) resulting damages.

41. Here, Defendant Vesta intentionally and improperly interfered with Plaintiff's performance of many contracts, with knowledge of their relationship, most apparently the contract with CSMI, Inc. as the on-site property manager when Defendant evicted Plaintiff on May 3rd without any court authorization. Defendant Vesta also interfered with Plaintiff's contracts with its security company, the food markets, Narcotics Anonymous, and other employees hired to perform on the premises.

42. By taking all of Plaintiff's computers, corporate records, etc. Defendant Vesta has interfered with Plaintiff's ability to conduct any business at this time.

43. Defendant Vesta also interfered with Plaintiff's relationship with DHCD, as it orchestrated this taking by placing Plaintiff in a position to be unable to respond to the Default notices issued by DHCD. Defendant also has maliciously interfered with

Plaintiff's role as business owner of the property, by holding meetings with resident's, in concert with DHCD, by telling residents that they are the new owners, speaking maliciously against the Plaintiff, and displaying plans and drawings of proposed renovations, as if the purchase of the building had been consummated. Defendant has even placed a sign on the building claiming property rights as the owner, when foreclosure has not occurred.

44.   By ordering contractors from the premises, and seizing the business and organizational documents that are relevant and necessary for the Plaintiff to operate as a business, without court order, by setting up bank accounts in Plaintiff's name without authorization, by evicting tenants in Plaintiff's name without court authorization, and by continuing to prevent Plaintiff from operating as the rightful owner of the premises, Defendant Vesta has committed a tortious and malicious interference with Plaintiff's right to operate as a non profit in the District of Columbia.

**WHEREFORE**, the Plaintiffs demand judgment against Defendant for compensatory damages in the amount of Two Hundred Thousand Dollars ($200,0000), and punitive damages in the amount of Ten Millions Dollars ($10,000,000).

### JURY DEMAND

The Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted,

Sharon Styles-Anderson, #412158
700 Southern Ave SE
Washington, DC  20032
(301) 370-9855 (o)
(301)809-0941 (fax)
Ssanderson2@hotmail.com
Counsel for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

CIVIL DIVISION

**VERIFICATION**

I, the undersigned, under the penalty of perjury verify that the facts and allegations contained therein are true, except so far as they are therein stated to be on information, and that, so far as they are therein stated to be on information, I believe them to be true.

_____   Nov 2, 2014
ROWENA JOYCE SCOTT-President          Date

Park Southern Neighborhood Corporation, Inc.